IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CRAIG BECK                                                                                          PLAINTIFF

v.                                         Case No. 4:16-cv-00495 KGB

MIKE RICHARDS, individually;
PATRICK STAGE, individually; PHILLIP
BENTLEY, individually; TIFFANY
EICHLER, individually and in her official
capacity as nurse in Saline County
Detention Center; and SALINE COUNTY,
ARKANSAS                                                                                           DEFENDANTS

**OPINION AND ORDER**

Plaintiff Craig Beck claims that he was denied adequate medical care while he was a pretrial detainee in the custody of the Saline County Detention Facility ("SCDF"). Before the Court is a motion for summary judgment filed by defendants Patrick Stage and Tiffany Eichler[1] and a motion for summary judgment filed under seal by defendants Mike Richards, Phillip Bentley, and Saline County, Arkansas ("Saline County") (Dkt. Nos. 25; 29). Mr. Beck, who is represented by counsel in this action, has not responded to the motions for summary judgment, and the time to do so has passed. For the following reasons, the Court grants both motions for summary judgment and dismisses with prejudice this action.

**I.    Background**

The following facts are taken from the statement of facts filed in conjunction with the defendants' motions for summary judgment (Dkt. Nos. 26; 31). As Mr. Beck failed to respond to the motions for summary judgment, these facts are deemed admitted. *See* E.D. Ark. R. 56.1(c)

---

[1] Ms. Eichler was incorrectly named in Mr. Beck's complaint as Tiffany Eichenberger (Dkt. No. 25, at 1). The Court directs the Clerk to change the docket to reflect the correct defendant and spelling of Ms. Eichler's name.

("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).").

Mr. Beck was booked into the SCDF on January 6, 2014. On January 9, 2014, he filed a grievance requesting to see a nurse and claiming "that he needed medications, that he had coronary heart diseases, significant blockage, chest pains, had a bad EKG and x-ray two weeks before and that he had been instructed to see the cardiologist ASAP" (Dkt. No. 26, ¶ 7). In response to the grievance, Ms. Eichler spoke with Mr. Beck. At all times relevant to this action, Ms. Eichler was a Licensed Practical Nurse ("LPN") employed by Southern Health Partners, Inc. ("SHP"), which provided medical services for inmates housed at the SCDF. As an LPN, Ms. Eichler did not have the authority to prescribe medications.

After speaking with Mr. Beck, Ms. Eichler requested his medical records from Conway Regional Health System. Ms. Eichler reviewed Mr. Beck's medical records and determined that his claims regarding the results of his recent EKG and x-ray were inaccurate:

> Specifically, Beck was seen at Conway Regional on December 19, 2013, where he had an unremarkable chest x-ray, an EKG with no acute changes, and the discharge note states "At this point, I have no reason to believe patient has life or limb-threatening problems or emergency medical condition and we are preparing to discharge him in good condition." The discharge plan was to follow-up as an outpatient or to return to Conway Regional as needed.

(*Id.*, ¶ 8).

Ms. Eichler saw Mr. Beck on January 10, 2014, to verify his medications. Mr. Beck informed Ms. Eichler that he received his medications from a Wal-Mart pharmacy, but when Ms. Eichler contacted the pharmacy, she could not verify the medications that Mr. Beck told her he was prescribed for his coronary disease. Within two and a half hours of initially speaking with

2

Mr. Beck, Ms. Eichler returned to Mr. Beck's cell to determine whether there were any other doctors or pharmacies from which he could have received the medications. Upon Ms. Eichler's return visit, Mr. Beck did not cooperate, but rather became hostile and belligerent. "While it is disputed exactly what happened, even [Mr.] Beck admits that someone called [Ms.] Eichler a 'bitch,' and that from the way it occurred, the staff believed that someone to be Beck" (Dkt. No. 31, ¶ 10). Ms. Eichler started Mr. Beck on his requested Aspirin treatment on January 10 or January 11, 2014, while she continued the necessary process of verifying his medications. Ms. Eichler was able to verify all of Mr. Beck's requested medications by January 15, 2014, and he began receiving his medications as they were verified.

While incarcerated at SCDF, Mr. Beck frequently complained about chest pain. Health care staff responded to Mr. Beck's complaints by "order[ing] EKGs and blood work, the results of which were contradictive of his complaints" (Dkt. No. 26, ¶ 12). In response to Mr. Beck's request to see his cardiologist at the Arkansas Heart Hospital, Mr. Stage scheduled an appointment for him. Arkansas Heart Hospital waived its normal upfront payment requirement for Mr. Beck's visit. At all times relevant to this action, Mr. Stage was an Advanced Nurse Practitioner ("ANP") employed by SHP. Mr. Stage worked at the Arkansas Heart Hospital and has specialized training and knowledge in cardiac care. As an ANP, he can write prescriptions for medications.

Dr. Mehmet Cilingiroglu saw Mr. Beck at the Arkansas Heart Hospital on January 31, 2014. After seeing Mr. Beck, Dr. Mehmet:

> [D]id not require any particular procedure, and did not identify any immediate cardiac issue. He had, per the complaints of [Mr.] Beck, suggested certain procedures, but [Mr.] Beck asked to hold the procedures until [Mr.] Beck had checked on this resources. Dr. Mehmet noted in the records that there was no acute distress and the heart had a regular rhythm. His discharge instructions were for a follow-up in four weeks. Tiffany Eichler relied on Patrick Stage for instructions following this appointment.

(*Id.*, ¶ 14).

After his January 31, 2014, visit to the Arkansas Heart Hospital, Mr. Beck requested that he be seen at the University of Arkansas for Medical Services ("UAMS"). UAMS routinely takes up to six months to schedule an appointment, and Dr. Mehmet does not have privileges at UAMS. Furthermore, UAMS informed both Ms. Eichler and Mr. Richards that Mr. Beck had a previous balance that must be paid before he could be seen in subsequent visit.

On February 4, 2014, Mr. Beck complained that he was having chest pains. On February 5, 2014, Mr. Stage increased Mr. Beck's dose of Imdur, "a nitrate medication that dilates blood vessels making it easier for the heart to pump blood[,]" in an effort to alleviate Mr. Beck's chest pain (*Id.*, ¶ 16). Mr. Stage increased Mr. Beck's dosage of Imdur from 30 milligrams to 60 milligrams. On February 7, 2014, Mr. Beck complained of intractable chest pain. "Up until this point, [Mr.] Beck was given and responded to Imdur or nitroglycerin which eliminated his chest pain. However, on this date, Imdur or nitroglycerin did not alleviate the complaints of pain, and Patrick Stage instructed that [Mr.] Beck be taken to Saline County Memorial Emergency Room" (*Id.*, ¶ 17). Mr. Beck was taken to the Saline County Memorial Emergency Room and underwent an angioplasty and stent placement. Mr. Beck "has no criticism of his treatment from Saline County Memorial Hospital" and "has no complaints of Dr. Lindell[,] who did his stents" (Dkt. No. 31, ¶ 22).

After undergoing the angioplasty and stent placement, Mr. Beck was discharged from Saline County Memorial Hospital without any restrictions. Mr. Beck:

> [W]as released back to the custody of Saline County Detention Facility with dietary instructions for a cardiac diet, no restrictions to his activity, and no special instructions/equipment given at discharge. He was continued on his prescription medications. . . . The daily Aspirin that he was given was sufficient for any pain he would have been expected to experience. [Mr.] Beck's pain was so minimal that he would have only needed Ibuprofen for 24 hours.

(Dkt. No. 26, ¶¶ 19-20). Ms. Eichler relied on Mr. Stage for instructions following Mr. Beck's angioplasty and stent placement. No SCDF administrators, including Mr. Richards and Mr. Bently, interfered with the decisions made regarding Mr. Beck's healthcare (*Id.*, ¶ 23).

## II. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**III.    Discussion**

In his complaint, Mr. Beck claims that the defendants violated his rights under the Fourteenth and Fourth Amendments (Dkt. No. 1, ¶ 1). He sues Mr. Richards, Mr. Bentley, Mr. Stage, and Ms. Eichler in their individual capacities (*Id.*, ¶¶ 4-6). Mr. Beck indicates in the caption of his complaint that he also sues Ms. Eichler in her official capacity, though in the body of his complaint, Mr. Beck states that he is only suing Ms. Eichler in her individual capacity (*Id.*, ¶ 6). Mr. Beck also seeks damages against Saline County, Arkansas, arguing that it:

> [I]s a governmental unit that operates the Saline County Detention Center at all times material of this cause of action and has policies and practices of providing inaccurate medical care to inmates and refusing to allow them to have medical treatment choice but sending them to Saline County [M]emorial but requiring the inmates to pay the medical bills incurred at [S]aline County Memorial.

(*Id.*, ¶ 7).

**A.    Fourth Amendment Claims**

In their motions for summary judgment, defendants argue that this Court must analyze Mr. Beck's claim under the Fourteenth Amendment's deliberate indifference standard (Dkt. No. 27, at 4; Dkt. No. 30, at 6-7) (citing *Butler v Fletcher*, 465. F.3d. 340, 344 (8th Cir. 2006)). The Court rejects this argument, as the Eighth Circuit Court of Appeals "has not resolved whether an arrestee's claim alleging denial of medical care is analyzed under the Due Process Clause or the Fourth Amendment." *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir.), *cert. denied*, 137 S. Ct. 60, 196 L. Ed. 2d 32 (2016); *see also Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) ("We have previously noted that in this circuit it is an open question whether the standard of the Fourth

or the Fourteenth Amendment applies to medical care claims of arrestees.") (citing *Bailey*, 810 F.3d at 593).

Despite this, the Court concludes that defendants are entitled to summary judgment on Mr. Beck's Fourth Amendment claims. Defendants are entitled to qualified immunity on these claims, as "a right under the Fourth Amendment against unreasonable delay in medical care for an arrestee was not clearly established" when the underlying events occurred in early 2014. *Bailey*, 810 F.3d at 593. It also was not "clearly established that a standard of objective reasonableness applies under the Due Process Clause." *Id.* (citing *Kingsley v. Hendrickson,* 135 S.Ct. 2466, 2473 (2015)).

Furthermore, even if Mr. Beck had a clearly established right under the Fourth Amendment against unreasonable delay in medical care, the defendants in this action would be entitled to summary judgment based on the undisputed facts in the record. Courts consider four factors in determining whether an "an officer's response to [a pretrial detainee's] medical needs was objectively unreasonable: (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011) (citing *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)). The pretrial detainee also has the burden of showing "that the defendants' conduct caused the harm of which [he] complains." *Id.* (citing *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)). For the reasons stated *infra* regarding Mr. Beck's deliberate indifference claims under the Fourteenth Amendment, the Court finds that the defendants' response to Mr. Beck's medical needs was objectively reasonable.

### B. Fourteenth Amendment Claims

Mr. Beck brings a claim against the defendants under the Fourteenth Amendment. "Prisoners and pretrial detainees are protected under the Constitution from a state actor's deliberate indifference towards the inmate's serious medical needs." *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 698 (8th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010)). To have a valid deliberate indifference claim under the Fourteenth Amendment, Mr. Beck has the burden of establishing "that he suffered an objectively serious medical need, and that the [defendants] had actual knowledge of those needs but deliberately disregarded them." *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (citing *Williams v. Kelso,* 201 F.3d 1060, 1064 (8th Cir. 2000)). The Court finds that Mr. Beck fails to present any evidence to establish both the objective and subjective prongs of this analysis.

"A medical need is objectively serious if it is supported by medical evidence, such as a physician's diagnosis, or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Bailey*, 810 F.3d at 594 (quoting *McRaven v. Sanders,* 577 F.3d 974, 982 (8th Cir. 2009)). Mr. Beck does not offer any medical evidence demonstrating that his medical needs were objectively serious—he offers no evidence at all. The evidence attached to defendants' motions for summary judgment does not show that Mr. Beck suffered from an objectively serious medical need. Approximately three weeks before Mr. Beck first complained to defendants about his health condition, Mr. Beck visited the Conway Regional Heath System after complaining of chest pains (Dkt. No. 27-1, at 3). After examining Mr. Beck, the Conway Regional Heath System physician determined that he had "no reason to believe [Mr. Beck] has a life or limb threatening problem or[] emergency medical condition and we are preparing to

discharge [him] in good condition" (*Id.*, at 7). Therefore, the relevant evidence pertaining to Mr. Beck's condition when he entered the SCDF does not establish that he suffered from an objectively serious medical need. When Mr. Beck visited Dr. Mehmet on January 31, 2014, Dr. Mehmet "did not identify any immediate cardiac issue" and "noted in [his] records that there was no acute distress and the heart had a regular rhythm" (Dkt. No. 26, ¶ 14). The relevant evidence pertaining to Mr. Beck's condition while confined in the SCDF does not establish that he suffered from an objectively serious medical need.

Furthermore, Mr. Beck's condition was not so obvious that a layperson would easily recognize the necessity for a doctor's attention. The Eighth Circuit Court of Appeals:

> [H]as found a serious medical need that was obvious to a layperson where an inmate: was pregnant, bleeding, and passing blood clots, *see Pool v. Sebastian County, Ark.,* 418 F.3d 934, 945 (8th Cir. 2005); had swollen and bleeding gums and complained of extreme tooth pain, *see Hartsfield v. Colburn,* 371 F.3d 454, 457 (8th Cir. 2004); experienced excessive urination, diarrhea, sweating, weight loss, and dehydration related to known diabetes, *see Roberson v. Bradshaw,* 198 F.3d 645, 647–48 (8th Cir. 1999); or exhibited signs of early labor and her medical records clearly documented a history of rapid labor and delivery, *see* [*Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997)].

*Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008). In each case where the Eighth Circuit found that a medical need was so obvious that even a layperson would easily recognize the necessity for a doctor's attention, "the inmate exhibited physical symptoms related to known medical issues or to complaints of pain." *Id.* The Eighth Circuit cautioned that "[t]he determination whether a medical need is sufficiently obvious cannot be analyzed in a vacuum. The prison officials' background knowledge is part of the analysis." *Id.*

The defendants in this action were aware that Mr. Beck claimed that he suffered from heart disease and that he frequently complained of chest pains during his time in custody. However,

9

the medical records from Mr. Beck's visit to Conway Regional weeks before entering the SCDF indicated that there was "no reason to believe [Mr. Beck had] life or limb-threatening problems or [an] emergency medical condition[,]" and Dr. Mehmet concluded that "there was no acute distress and the heart had a regular rhythm[,]" after seeing Mr. Beck on January 31, 2014 (Dkt. No. 26, ¶¶ 8, 14). EKGs and blood work taken after Mr. Beck complained of chest pain contradicted Mr. Beck's complaints. In the light of these test results, which defendants were aware of, Mr. Beck's medical needs were not so obvious that a layperson would easily recognize the need for a doctor's immediate attention. Therefore, the Court finds that Mr. Beck fails to demonstrate that he suffered from an objectively serious medical need, meaning the defendants did not violate his rights under the Fourteenth Amendment.

Even if Mr. Beck could establish that he suffered from an objectively serious medical need, the defendants would be entitled to summary judgment because the undisputed facts demonstrate that the defendants did not deliberately disregard any such need. "Deliberate indifference is 'more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1096 (8th Cir. 2000)). In this case, the undisputed facts show that Ms. Eichler and Mr. Stage promptly responded to Mr. Becks' medical grievances. When Mr. Beck filed a grievance on January 9, 2014, claiming that he needed medications and had been instructed to see a cardiologist, Ms. Eichler spoke with Mr. Beck, reviewed his medical documentation, and retrieved Mr. Beck's medications. Mr. Beck received all of his medications as Ms. Eichler was able to verify them, and the undisputed facts demonstrate that Ms. Eichler was diligent in seeking to verify Mr. Beck's medications. In

response to Mr. Beck's complaints of chest pain, health care staff ordered "EKGs and blood work, the results of which were contradictive of [Mr. Beck's] complaints" (Dkt. No. 26, ¶ 12). Mr. Stage arranged an appointment for Mr. Beck to see Dr. Mehmet at the Arkansas Heart Hospital. When Mr. Beck requested to be seen at UAMS, Ms. Eichler and Mr. Richards contacted UAMS on his behalf. Mr. Stage increased Mr. Beck's dose of Imdur in an effort to alleviate his chest pain after Mr. Beck complained of chest pain, and when the increased dosage was ineffective, Mr. Stage sent Mr. Beck to the Saline County Memorial Emergency Room, where he underwent an angioplasty and stent placement. Mr. Beck "has no criticism of his treatment from Saline County Memorial Hospital" and "has no complaints of Dr. Lindell[,] who did his stents" (Dkt. No. 31, ¶ 22). No SCDF administrators, including Mr. Richards and Mr. Bently, interfered with the decisions made regarding Mr. Beck's healthcare (*Id.*, ¶ 23).

This undisputed evidence shows that no defendant was deliberately indifferent to Mr. Beck's medical needs. Therefore, the defendants, including Saline County, are entitled to summary judgment on Mr. Beck's Fourteenth Amendment claims. *See Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) ("A claim against a county is sustainable *only where a constitutional violation has been committed* pursuant to an official custom, policy, or practice.") (emphasis added).

To the extent that Mr. Beck claims that his constitutional rights were violated because he did not receive treatment at UAMS and later received a bill for his visit to the Saline County Memorial Emergency Room, the Court rejects his claim (Dkt. No. 1, ¶ 21) ("As a direct result of the action of the Defendants not releasing him and allowing him to get treatment at the University the Plaintiff now has a bill which the Defendants should be responsible for."). Prisoners do not

have a constitutional right to free medical care. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) ("Roberson's primary complaint against the County is its policy of requiring inmates to pay for their own medications if they can afford to do so. That is not a federal constitutional violation."); *Register v. Helder*, No. 5:15-CV-05052, 2017 WL 741149, at *9 (W.D. Ark. Feb. 2, 2017), *report and recommendation adopted*, No. 5:15-CV-05052, 2017 WL 741007 (W.D. Ark. Feb. 24, 2017) ("[W]hile jails must provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost.") (citing *Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997)).

**IV.   Conclusion**

Defendants' motions for summary judgment are granted (Dkt. Nos. 25; 29). Mr. Beck's claims are dismissed with prejudice.

So ordered this the 3rd day of August, 2017.

_____
Kristine G. Baker
United States District Judge